# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CR460 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| JESUS PERDOMA, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Jesus Perdoma (Perdoma).  **See** Filing No. 16.  Perdoma is charged in the Indictment with possession with intent to distribute 50 grams or more of a substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1).  **See** Filing No. 1 - Indictment.  Perdoma seeks to suppress all evidence and statements derived from his stop, search, interview and arrest on November 17, 2008.  **See** Filing No. 16.

On March 3, 2009, the court held an evidentiary hearing on Perdoma's motion. Perdoma was present with his counsel Denise E. Frost.  Assistant United States Attorney Thomas Kangior represented the United States.  During the hearing, the court heard the testimony of Nebraska State Patrol (NSP) Investigator Alan Eberle (Investigator Eberle). No exhibits were offered during the hearing.  Perdoma filed a brief in support of his motion. **See** Filing No. 17.  The government filed a brief in opposition to Perdoma's motion.  **See** Filing No. 19.  A transcript (TR.) of the hearing was filed on March 6, 2009, whereupon Perdoma's motion was taken under advisement.  **See** Filing No. 27.

## FINDINGS OF FACT

Investigator Eberle has been employed with the NSP since July 1997 and is currently assigned to the commercial interdiction unit (TR. 3-4).  On November 17, 2008, Investigator Eberle was wearing plain clothing and working at the Greyhound bus terminal located at 16th and Jackson Streets in Omaha, Nebraska (TR. 4-5, 21-22).

At approximately 6:00 a.m., Investigator Eberle was standing inside the lobby of the terminal, on the north side (TR. 4-5, 14).  As he walked through the terminal toward the

north entrance, Investigator Eberle observed a black SUV located on Jackson Street in front of the terminal (TR. 5). The black SUV appeared to be a private vehicle, rather than a licensed cab (TR. 21, 32). Investigator Eberle observed the vehicle travel westbound on Jackson Street and stop briefly (TR. 5, 17-18). Within seconds, Investigator Eberle observed Perdoma exit the vehicle with one carry-on bag (TR. 5, 17-18). Perdoma did not appear to make any gestures to the occupants of the vehicle as he walked into the terminal (TR. 5). Based on his observations, Investigator Eberle decided to surveille Perdoma to see what action he took inside of the terminal, and informed fellow NSP Investigator Scott of his intent to monitor Perdoma (TR. 6).

Perdoma entered the line to purchase a bus ticket (TR. 6). Perdoma had a small, soft-sided, carry-on bag with a seemingly normal looking exterior and a zippered top in his possession (TR. 23, 46). While Perdoma waited in line to purchase his ticket, Investigator Eberle stood approximately four to five feet to the left of Perdoma and listened to Perdoma's interaction with the ticket agent (TR. 6-7, 24-25). Perdoma purchased a one-way ticket from Omaha, Nebraska, to Des Moines, Iowa (TR. 7). Investigator Eberle watched Perdoma speak to the ticket agent in the English language, give the name Jesus Cruz, and pay for the ticket with approximately $30.00 cash, which Perdoma retrieved from his wallet (TR. 6-8, 26). When Perdoma took the cash out of his wallet, Investigator Eberle noticed Perdoma appeared nervous and his hands were shaking (TR. 7). At this time, the officer also saw a form of government identification located in the wallet (TR. 7, 10). From his position, Investigator Eberle was unable to read the name on the identification (TR. 27).

After Perdoma purchased his ticket and walked away from the ticket counter, Investigator Eberle approached and identified himself (TR. 8). Specifically, Investigator Eberle presented his badge to Perdoma, identified himself as a police officer and asked if Perdoma had a few minutes to talk to him (TR. 8). Investigator Eberle did not make physical contact with Perdoma, however Perdoma turned to face Investigator Eberle and began to converse with him (TR. 8). Perdoma responded to a series of questions by stating he had come from Denver, Colorado, and had stayed the previous night in Omaha, Nebraska, at a Super 8 Motel (TR. 8). Perdoma also told Investigator Eberle he arrived at the terminal by cab and was traveling to Des Moines, Iowa, to his home (TR. 9).

While conversing, Investigator Eberle was about three feet away, but facing Perdoma (TR. 30-31). At that time, Investigator Eberle detected the odor of marijuana, both burnt and raw, coming from Perdoma's person (TR. 10, 30-31). Through his experience, Investigator Eberle has become familiar with the odor of marijuana and has encountered marijuana several hundred, if not one thousand, times before (TR. 11). Investigator Eberle was certain the smell coming from Perdoma was marijuana, but never informed Perdoma (TR. 12, 36).

Investigator Eberle asked Perdoma if he had his bus ticket with him (TR. 9). Perdoma pulled the ticket out of his coat pocket, briefly presented it to Investigator Eberle, and then replaced it in his coat pocket (TR. 9-10). Investigator Eberle was unable to actually read the ticket (TR. 32). Subsequently, Investigator Eberle asked to view Perdoma's ticket, along with a form of identification (TR.10). Perdoma advised Investigator Eberle he did not have any identification with him (TR. 10). Perdoma did not present his bus ticket to Investigator Eberle (TR. 10).

Investigator Eberle asked Perdoma if he had a wallet (TR. 10). Perdoma responded by saying, "Why? Why do you ask me this question?" (TR. 10). Investigator Eberle informed Perdoma individuals usually keep identification in their wallets and asked if he could view Perdoma's wallet (TR. 11). As Perdoma pulled his wallet out of his pocket, Investigator Eberle noticed Perdoma's nervous demeanor including rapid breathing and body tremors (TR. 11). Additionally, Perdoma looked around the terminal, appearing as if he was about to run (TR. 11). Due to Investigator Eberle's experience, his suspicions were heightened when Perdoma exhibited these nervous behaviors (TR. 11). Specifically, Perdoma's behaviors led Investigator Eberle to believe Perdoma would either fight or run from him (TR. 11). At this point, Perdoma began to open the wallet, but paused briefly and looked around the terminal again (TR. 12). Perdoma replaced the wallet in his coat and then ran away from Investigator Eberle (TR. 34-35). As Perdoma began to leave, Investigator Eberle grabbed hold of Perdoma's jacket (TR. 36). Investigator Eberle said "stop" and "police," but Perdoma did not comply with the verbal commands (TR. 34, 37). Perdoma ran approximately 15-20 feet from Investigator Eberle, to the mid portion of the terminal (TR. 12, 37). Investigator Eberle chased Perdoma and was assisted by NSP Investigator Scott (TR. 12). Once Investigators Eberle and Scott caught Perdoma, there

was a short struggle and all three men went to the ground (TR. 12, 37). The officers placed Perdoma under arrest for obstructing an officer and resisting arrest (TR. 43). Perdoma was placed in restraints and escorted to the rear baggage terminal, out of public view (TR. 12).

NSP Investigators Eberle, Scott and Rasgorshek were present in the rear baggage area with Perdoma (TR. 39). Perdoma did not make any statements after the NSP Investigators advised Perdoma of his *Miranda* rights (TR. 44). Investigator Eberle conducted the initial search of Perdoma's person and found four grams of marijuana located in Perdoma's coin pocket (TR. 13, 39). Simultaneously, Investigator Scott conducted a search of Perdoma's carry-on bag and located approximately one pound of methamphetamine, which was wrapped in a towel (TR. 13, 42).

## LEGAL ANALYSIS

### A.   Personal Encounter

Perdoma asserts Investigator Eberle did not have a sufficient, articulable basis for a reasonable suspicion that Perdoma had committed, or was in the process of committing a criminal act. **See** Filing No. 16 - Motion p. 3. Specifically, Perdoma asserts none of his actions were illegal and therefore did not give rise to a reasonable suspicion criminal activity was afoot or had been committed at the time Investigator Eberle approached him. *Id.* Thus, Perdoma contends there were no reasonable, constitutional grounds for Investigator Eberle to stop, question, and restrain Perdoma under any applicable standard. *Id.* at 4.

"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 (1968). A seizure does not occur when a police officer approaches an individual and merely questions him or asks to examine his identification -- so long as the officer does not convey a message that compliance with his request is required. **See** *Florida v. Bostick*, 501 U.S. 429, 434 (1991); **see also** *United States v. Drayton*, 536 U.S. 194, 200-01 (2002). If "a reasonable person would feel free 'to disregard the police and go about his business,'" the encounter is consensual and no reasonable suspicion is required. *Id.* (**quoting** *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). "It is well established that law enforcement officers do not

violate the Fourth Amendment by merely approaching an individual on the street or in another public place . . . [and] putting questions to him if the person is willing to listen." *United States v. Green*, 52 F.3d 194, 198 (8th Cir. 1995) (citations omitted). Furthermore, a request for information does not turn consensual questioning into an investigatory stop. *United States v. Pena-Saiz*, 161 F.3d 1175, 1177 (8th Cir. 1998); *United States v. Poitier*, 818 F.2d 679, 682-83 (8th Cir. 1987). In addition, the government bears the burden of proving the initial encounter was voluntary, or that justification otherwise existed for each increasingly intrusive restraint on the defendant. **See** *Missouri v. Seibert*, 542 U.S. 600, 609 (2004); *United States v. Escobar*, 389 F.3d 781, 785 (8th Cir. 2004) ("The government bears the burden of showing consent was freely and voluntary given and not a result of duress or coercion, and the burden cannot be discharged by showing mere acquiescence to a claim of lawful authority.").

Perdoma alleges none of his actions on November 17, 2008, were out of the ordinary or illegal. Furthermore, Perdoma alleges Investigator Eberle did not have a sufficient, articulable basis for a reasonable suspicion Perdoma had, or was in the process of committing a criminal act. Therefore, Perdoma contends Investigator Eberle had no reasonable basis to approach Perdoma and initiate the stop. **See** Filing No. 17 - Brief p. 2. However, Perdoma turned to face Investigator Eberle and spoke with him after the officer informed Perdoma he was an investigator with the NSP and Perdoma was "not under arrest or in any kind of trouble" (TR. 9). Investigator Eberle did not use physical force or coercion on Perdoma and Perdoma was not in custody and had no legal obligation to speak with Investigator Eberle or to comply with his requests (TR. 13, 28-29). Under these circumstances, a reasonable person would not have felt obligated to comply with Investigator Eberle's questioning (TR. 9). For these reasons, the court concludes the initial contact between Investigator Eberle and Perdoma was consensual.

In the instant case, Perdoma engaged in a consensual conversation with Investigator Eberle. During the consensual encounter, Investigator Eberle detected the odor of marijuana on Perdoma (TR. 12, 36). Although he did not inform Perdoma of his observation, Perdoma became increasingly nervous (TR. 11, 36). Perdoma did not attempt to peaceably terminate the encounter, rather Perdoma suddenly turned and ran away. On these facts, it is clear Perdoma ran from a police officer. The court must

determine whether Investigator Eberle was "engaged in enforcement of the penal law" or "preservation of the peace" at that time. **See** Neb. Rev. Stat. § 28-906(1).

Under Nebraska law, "A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders . . . the enforcement of the penal law or the preservation of the peace by a peace officer . . . acting under color of his or her official authority." Neb. Rev. Stat. § 28-906(1). "The mere act of running away from law enforcement officers constitutes physical interference or obstacle within the meaning of this provision." *United States v. Sledge*, 460 F.3d 963, 965 (8th Cir. 2006) (**citing** *In re Interest of Richter*, 415 N.W.2d 476, 478 (1987)).

The facts of this case are similar to the factual situation presented in *United States v. Sledge*. In order to perform a pat-down search, an officer asked Sledge to exit the vehicle, in which Sledge was a passenger, and Sledge complied. *United States v. Sledge*, 460 F.3d 963, 965 (8th Cir. 2006). However before the pat-down was completed, Sledge turned and ran away from the officer. *Id.* Sledge ran approximately five yards before he was apprehended by several officers. *Id.* Sledge was placed under arrest. *Id.* Even assuming the initial detention and pat-down of Sledge were unlawful, Sledge's conduct provided probable cause for arrest under Nebraska law for obstructing a peace officer. *Id.* at 966, 968. Specifically, "resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." *Id.* at 966.

Although the court determined the initial contact between Investigator Eberle and Perdoma was consensual, almost immediately the contact transformed into an investigatory detention. The change was due to Investigator Eberle's detection of the odor of marijuana on Perdoma. Perdoma was not made aware of the change in the nature of the encounter. However, Investigator Eberle was legally justified to briefly detain Perdoma based on the odor of marijuana.

"It is well established, of course, that a law enforcement officer may detain a person for investigation without probable cause to arrest if the officer 'has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (**quoting** *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation and citation omitted)). "Whether the particular facts known

6

to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). "Reasonable suspicion does not, however, exist solely on the basis of an officer's hunch. To satisfy the Fourth Amendment, officers must be able to articulate some minimal, objective justification for a *Terry* stop." *Griffith*, 533 F.3d at 983-84. An officer may continue the detention for a reasonable period to verify or dispel the suspicion. *Maltais*, 403 F.3d at 556.

In this case, the officer made an observation smelling the odor of marijuana on Perdoma. Based on such observation, Investigator Eberle continued the contact with Perdoma to determine his identity and travel plans. At that time, Perdoma told Investigator Eberle he did not have any identification and had traveled to the bus terminal by cab. Investigator Eberle did not believe Perdoma based on Investigator Eberle's own observations of Perdoma's arrival and ticket purchase. Ultimately, Investigator Eberle did find marijuana on Perdoma, which corroborates Investigator Eberle's earlier observation. In any event, Investigator Eberle was justified in a temporary investigatory detention of the Perdoma based on the suspected marijuana use and possession. The detention was not unreasonably long. There was only a brief time between the initial contact between Investigator Eberle and Perdoma, Investigator Eberle's observation of the odor of marijuana, and Perdoma's flight. Accordingly, it was during the period of investigatory detention that Perdoma turned to flee. However, Perdoma was not free to terminated the encounter. For this reason, Investigator Eberle was "engaged in enforcement of the penal law" and Perdoma's flight did obstruct, impair, or hinder Investigator Eberle.

In the alternative, if the encounter was consensual until Perdoma terminated such consent by turning away, the officers were warranted in expanding the scope of the encounter to a *Terry* stop, based on the totality of the circumstances. **See *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008)**. Perdoma's evasive behavior is a pertinent factor in determining reasonable suspicion required for a *Terry* stop. In *Illinois v. Wardlow*, 528 U.S. 119 (2000), Chief Justice Rehnquist wrote for the majority: "Headlong flight - <u>wherever it occurs</u> - is the consummate act of evasion. It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 124 (emphasis added). In *Florida v. Royer*, 460 U.S. 491 (1983), the Supreme Court held a

person has a right to ignore police and go about one's business and such action alone does not furnish a police officer with reasonable suspicion or probable cause to detain a person. Ignoring the police is one matter, but it is all together different if the suspect runs from the police. Chief Justice Rehnquist further wrote in **Wardlow**,

> Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Wardlow*, 528 U.S. at 125. **Terry** and the Fourth Amendment accepts the risk that police officers may stop innocent persons to avoid more drastic police actions. *Id.* at 126. Such a detention can resolve an ambiguity of criminal activity or mere innocent activity. The court must look to the totality of the circumstances in gauging the sufficiency of the reasonableness of suspicion warranting a **Terry** stop because flight is a factor, together with other factors, which can support a reasonable suspicion. *Id.* at 124. In this matter Investigator Eberle articulated at least some minimal, objective justification for a **Terry** stop before, and definitely after, Perdoma's flight. *Griffith*, 533 F.3d at 983-84. Under these circumstances, the court finds Perdoma's actions provided the NSP with grounds to arrest Perdoma.

**B.    Search**

Perdoma asserts the illegality of the stop and questioning upon which the search of Perdoma and his carry-on bag were predicated, renders the searches unconstitutional. **See** Filing No. 16 Motion p. 4. Therefore, Perdoma contends because the searches were invalid, the evidence found on his person and in his carry-on bag should be suppressed and not admitted into evidence. *Id.* p. 5. In addition, Perdoma contends the searches of his person and carry-on bag were conducted simultaneously. Therefore, according to Perdoma, the search of the bag could not be justified by the discovery the contraband found on Perdoma.

As discussed above, Investigator Eberle could have permissibly arrested Perdoma based on his conduct of obstructing a police officer and searched him incident to that arrest. *Chimel v. California*, 395 U.S. 752 (1969). The right to conduct such a search

incident to arrest is absolute and not determinative of any concern for officer safety or destruction of evidence. Searches of a person incident to arrest are per se reasonable under the Fourth Amendment. *United States v. Robinson*, 414 U.S. 218, 226 (1973). The arrest need not be premised on locating contraband on Perdoma. Perdoma's flight provided justification for arrest and the search incident to arrest. *Sledge*, 460 F.3d at 968. Because Perdoma was lawfully arrested for obstructing an officer and resisting arrest, the NSP Investigators were justified in searching Perdoma's person, as well as his carry-on bag. Under these circumstances, the court finds the search of Perdoma and his carry-on bag to be reasonable and lawful. Accordingly,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Jesus Perdoma's motion to suppress (Filing No. 16) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 7th day of April, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge